**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ARENA IP, LLC,<br><br>    Plaintiff,<br><br>      v.<br><br>NEW ENGLAND PATRIOTS, LLC,<br><br>    Defendant. | Civil Action No. 4:23-cv-00428 |

**DEFENDANT NEW ENGLAND PATRIOTS' MOTION AND BRIEF IN SUPPORT**
**TO DISMISS FOR FAILURE TO STATE A CLAIM BASED ON 35 U.S.C. § 101**

# **TABLE OF CONTENTS**

I.      Introduction ................................................................................................. 1

II.     Background.................................................................................................... 3

      A.      The Parties ........................................................................................ 3

      B.      The '820 Patent ................................................................................ 5

III.    Legal standard ............................................................................................. 7

      A.      Rule 12(b)(6) Motion to Dismiss Standard ................................. 7

      B.      Patent Ineligibility Is a Threshold Question of Law.................... 7

      C.      The Two-Part *Alice* Test ................................................................. 8

IV.     Argument ...................................................................................................... 9

      A.      The Claims of the '820 Patent Are Directed to an Abstract Idea . 9

      B.      The Challenged Claims Lack Any Inventive Concept That Would

              Make Them Patentable ................................................................. 14

      1.      The Independent Claims Add Nothing Inventive ...................... 14

      2.      The Dependent Claims Add Nothing Inventive ......................... 17

      C.      The Patent Claims Are Ineligible on the Pleadings .................... 17

V.      Conclusion ................................................................................................. 20

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)...................................................................19

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)........................................................... *passim*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)........................................................................... *passim*

*Arena IP, LLC v. Aruba Networks, LLC*,
    No. 6:22-cv-00885 (W.D. Tex.)......................................................................4

*Arena IP, LLC v. AT&T Inc.*,
    No. 6:22-cv-00384 (W.D. Tex.)......................................................................4

*Arena IP, LLC v. Boingo Wireless, Inc.*,
    No. 4:23-cv-00085 (E.D. Tex.)........................................................................4

*Arena IP, LLC v. Cisco Systems, Inc.*,
    No. 6:22-cv-00382 (W.D. Tex.)......................................................................4

*Arena IP, LLC v. CommScope, Inc. of North Carolina*,
    No. 2:22-cv-00332 (E.D. Tex.)........................................................................4

*Arena IP, LLC v. Ericsson Inc.*,
    No. 6:22-cv-00381 (W.D. Tex.)......................................................................4

*Arena IP, LLC v. Extreme Networks, Inc.*,
    No. 3:23-cv-00238 (N.D. Tex.)......................................................................4

*Arena IP, LLC v. Extreme Networks, Inc.*,
    No. 3:23-cv-00238-S (N.D. Tex. 2023)...........................................................1

*Arena IP, LLC v. Minnesota Vikings Football LLC*,
    No. 3:23-cv-00260 (N.D. Tex.)......................................................................4

*Arena IP, LLC v. Verizon Communications, Inc.*,
    No. 6:22-cv-00054 (W.D. Tex.)......................................................................4

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F. 3d 1371 (Fed. Cir. 2015)...................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................7

*Bilski v. Kappos*,
  561 U.S. 593 (2010)...............................................................................7

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)..............................................................9

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019)............................................................19

*Chamberlain Grp, Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019)..............................................................2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)....................................................... *passim*

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)....................................................9, 14, 18

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)............................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..............................................................2

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016)............................................................17

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) .......................................................13, 18

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015)............................................................13

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)..............................................................8

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)......................................................3, 8, 19

*Sensormatic Elec., LLC v. Wyze Labs, Inc.*,
  No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021)................2

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 ............................................................................7, 16, 18, 20

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)................................................... *passim*

*Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)...........................................................11, 19

*Ultramercial, Inc. v. Hulu*,
    LLC, 772 F.3d 709 (Fed. Cir. 2014) .....................................................10

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) .............................................................14

## Statutes

35 U.S.C. § 101............................................................................ *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6).................................................................1, 3, 7, 17

Fed. R. Civ. P. 12(a)(2).......................................................................7

In its Amended Complaint, Arena IP, LLC ("Plaintiff" or "Arena IP") alleges that the New England Patriots, LLC ("Defendant" or "New England Patriots") infringes U.S. Patent No. 8,320,820 (the "'820 patent").[1]  But even with the opportunity to supplement its allegations, the Amended Complaint does not, and critically cannot, set forth a plausible claim for relief.  This is because, on its face, the claims of the '820 patent lack an inventive concept as required under 35 U.S.C. § 101.  Specifically, the claims of the '820 patent do not meet the subject matter eligibility requirement of § 101 under the two-step test set forth in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), because they are (1) directed to the abstract idea of providing Wi-Fi access in a public venue, and (2) merely use generic computer components and functions in a generic way to carry out that abstract idea.  Accordingly, the New England Patriots respectfully moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).

## I.     INTRODUCTION

The broad concept of providing Wi-Fi access in a public venue is not patentable.  Yet the claims of the '820 patent are directed to no more than that abstract idea.  '820 patent at Abstract ("A system supports communications of video and data to hand held devices located within a public venue (e.g., sports stadium).").  The claims fail to recite any improvement to computer technology, instead merely reciting a "server" and "wireless

---

[1] Plaintiff Arena IP, LLC asserted the same patent against Extreme Networks, Inc. ("Extreme Networks").  *See Arena IP, LLC v. Extreme Networks, Inc.*, No. 3:23-cv-00238-S (N.D. Tex. 2023).  Arena IP voluntarily dismissed after Extreme Networks filed a motion to dismiss for failure to state a claim based on 35 U.S.C. § 101 that was substantively the same as the instant motion.

communications electronics and an integrated antennae . . . to operate as a wireless access point"—generic computing components well-known to provide Wi-Fi access to any venue. '820 patent at cl. 1, 8, 15. Consequently, none of the claim limitations, alone or in combination, add an inventive concept that takes the claims beyond that abstract idea.

The Federal Circuit has repeatedly found that such claims are invalid under § 101. *See, e.g.*, *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (invalidating claims directed at "wirelessly communicating regional broadcast content to an out-of-region recipient"); *Chamberlain Grp, Inc. v. Techtronic Indus. Co*., 935 F.3d 1341, 1347 (Fed. Cir. 2019) (invalidating claims because "the broad concept of communicating information wirelessly, without more, is an abstract idea"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) (invalidating "lengthy and numerous" claims directed to "monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results"); *Sensormatic Elec., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838, at *1 (Fed. Cir. July 14, 2021) (invalidating claims "directed to the abstract ideas of 'wireless communication and remote surveillance'"). Indeed, the specification makes clear that no specific implementation is required. *See, e.g.*, '820 patent at 2:25–29 ("wireless communications electronics (e.g., wireless access point, repeaters) and an integrated antennae that can be deployed as a communications node within the public venue."). Rather, the purported invention merely takes well-known components for wireless access points and puts them into a public venue, solving the "problem" that some older venues do not have Wi-Fi access. *See, e.g.*, '820 patent at 1:66–2:3 ("[T]here is a need to provide systems that can enable video and data

communications with multiple wireless hand held devices for older entertainment venues, and/or for any public venues where data access is only needed temporarily or long-term.").

The Federal Circuit has continually emphasized that patent-ineligibility "may be, and frequently has been, resolved on a Rule 12(b)(6)" as a matter of law, where there are no relevant factual disputes. *See, e.g.*, *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (affirming this Court's pleading-stage judgment of invalidity under § 101). That is particularly so here, where even Arena IP's own infringement allegations confirm that the claims of the '820 patent attempt to preempt the use of any Wi-Fi access points in a public venue. *See* Am. Compl. ¶¶ 14–17 (alleging infringement by any "system supporting communications of video and data to hand held devices located within a public venue"). As a matter of law, the claims of the '820 patent are invalid, and Arena IP's Amended Complaint should be dismissed.

## II.    BACKGROUND

### A.    The Parties

Defendant New England Patriots is an NFL football team in the Greater Boston area, founded in 1959 as the Boston Patriots. The New England Patriots hold the record for the most Super Bowl wins (six, tied with the Pittsburgh Steelers). The New England Patriots are accused of patent infringement based on their use of wireless data communications nodes in Gillette Stadium to allow venue attendees "access to video and data by hand held devices also located within the public venue." '820 patent at 1:29–30.

Plaintiff Arena IP is a non-practicing entity based in New Mexico associated with Ortiz & Lopez PLLC (d/b/a OL Patents), an IP firm linked with dozens of patent litigation

campaigns. Luis Ortiz, a named partner at OL Patents and the named inventor of the '820 patent, is a patent attorney. Mr. Ortiz is the named inventor on dozens of patents directed to disparate subject matter, ranging from electric vehicle rescue systems (U.S. Patent No. 11,188,995), to systems for redeeming negotiable economic credits such as discount coupons (U.S. Patent No. 10,783,529), to systems for providing wearable computing devices with secure access (U.S. Patent No. 10,362,480), to biometric authentication systems (U.S. Patent No. 8,499,164), to a fluid driven electric power generation system (U.S. Patent No. 8,067,852).

Arena IP has asserted the '820 patent in nine other suits: *Arena IP, LLC v. Ericsson Inc.*, No. 6:22-cv-00381 (W.D. Tex.); *Arena IP, LLC v. AT&T Inc.*, No. 6:22-cv-00384 (W.D. Tex.); *Arena IP, LLC v. Cisco Systems, Inc.*, No. 6:22-cv-00382 (W.D. Tex.); *Arena IP, LLC v. Aruba Networks, LLC*, No. 6:22-cv-00885 (W.D. Tex.); *Arena IP, LLC v. CommScope, Inc. of North Carolina*, No. 2:22-cv-00332 (E.D. Tex.); *Arena IP, LLC v. Verizon Communications , Inc.*, No. 6:22-cv-00054 (W.D. Tex.); *Arena IP, LLC v. Boingo Wireless, Inc.*, No. 4:23-cv-00085 (E.D. Tex.); *Arena IP, LLC v. Extreme Networks, Inc.*, No. 3:23-cv-00238 (N.D. Tex.); *Arena IP, LLC v. Minnesota Vikings Football LLC*, No. 3:23-cv-00260 (N.D. Tex.). As here, in each of these suits, Arena IP alleges infringement against any "system supporting communication of video and data to hand held devices located within a public venue," without regard to any specific implementation or design. Am. Compl. ¶¶ 14–17.

Notably, the Amended Complaint alleges that "[t]he '820 patent relates to novel and improved methods and systems for communications of video and data to hand held devices

located within a public venue" (*id.* ¶ 8), but fails to explain how the claims of the '820 patent recite a "novel" or "improved" system over prior art technology.

## B.     The '820 Patent

The "innovation" of the '820 patent is to provide Wi-Fi access in older stadiums by incorporating conventional wireless access points into those venues. The '820 patent is directed to "wireless data communications system communications nodes set up to establish a communication network within public venues including sports and entertainment venues." '820 patent at 1:22–26. The '820 patent explains that "[a]lthough new stadiums are being built with wireless capabilities, still many entertainment venues are older and lack the 'built-in' wireless data communications infrastructure necessary to support large scale hand held device access to live video recorded by cameras at entertainment venues and associated entertainment data." *Id.* at 1:58–63. The '820 patent "solves" this purported problem by reciting a "system supporting communications of video and data to hand held devices located within a public venue to include more than one pod deployed through the public venue." *Id.* at 2:31–34. The pod includes generic components to provide Wi-Fi. Specifically, the "pod includ[es] wireless communications electronics (e.g., wireless access point, repeaters) and an integrated antennae that can be deployed as a communications node within the public venue and can provide data including video from at least one server to hand held wireless devices located in the public venue through a data network." *Id.* at 2:25-30. Thus, the specification describes no improved wireless communication techniques. Instead, the specification merely explains that the pod can use

any generic "wireless communications electronics representing access points and wireless repeaters." *Id*. at 3:42-45.

The patent's claims likewise provide no purportedly improved computer technology. The independent claims (claims 1, 8, 15) each merely require a server and more than one "pod including wireless communications electronics and an integrated antennae . . . to operate as a wireless access point" to allow spectators to access data on the server.

Claim 1 below is representative:

1. A system providing communications capacity and supporting the communications of video and data to hand held wireless devices located throughout a sports and entertainment venue, comprising:

at least one server managing data including video of various perspectives of an activity captured by video cameras located throughout the sports and entertainment venue; and

more than one self-contained pod including wireless communications electronics and an integrated antennae for said self-contained pod to operate as a wireless access point sustaining bi-directional communication with said at least one server, said more than one self-contained pod deployed as a matrix of communications nodes throughout a sports and entertainment venue to provide enhanced communications capacity for and data network access by said hand held wireless devices being used by spectators located throughout the sports and entertainment venue and providing access to said data from the at least one server to said hand held wireless devices in use by the spectators.

The dependent claims add similar generic limitations, such as including an off-the-shelf rechargeable power source (claims 2, 6, 9, 13, 16, 20), an off-the-shelf solar cell (claims 3, 7, 10, 14, 17, 21), or requiring the pods to be embedded in a wall or floor surface (claims 4, 5, 11, 12, 18, 19). These generic requirements are used in a conventional way, and add no innovative computer technology or techniques.

Arena IP alleges that the New England Patriots "maintains, operates, and administers systems, products, and services that infringes [sic] one or more of claims 1-21 of the '820 patent."  Am. Compl. ¶ 14.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(6) Motion to Dismiss Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint is required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This requires enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### B.  Patent Ineligibility Is a Threshold Question of Law

Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry and an issue of law.  *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1358-59 ("Patent eligibility under § 101 is a question of law that may involve underlying questions of fact."); *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (describing Section 101 as a "threshold test").  "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding

of ineligibility under the substantive standards of law." *SAP Am.*, 898 F.3d at 1166 (collecting cases).

### B.    The Two-Part *Alice* Test

For the merits of a § 101 determination, the Supreme Court has set out a two-part test for patent eligibility. *Alice,* 573 U.S. at 217–18. At step one, the Court determines "whether the claims at issue are directed to a patent ineligible concept" such as an abstract idea, law of nature, or natural phenomenon. *Id*. at 218. In determining whether a claim is directed to an abstract idea, courts "ascertain[] the basic character of the subject matter" of the claims. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015). "The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs¸* 838 F.3d at 1257.

If the claims are directed to a patent-ineligible concept, at step two, the Court identifies an "'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (alteration in original) (internal quotation marks and citation omitted). "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns LLC Patent Litig*., 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting *Alice*, 573 U.S. at 225). "Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry.'" *Id.* (alteration in original). "If a claim's only

'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018).

Finally, while individual patent claims are independent legal rights, courts are free to treat claims together for purposes of resolving patentable subject matter where those claims contain the same basic elements. For this reason, a movant may challenge eligibility through representative claims and without engaging in repetitive attacks on the individual claims. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding the district court "correctly determined that addressing each claim of the asserted patents was unnecessary" because all claims were "substantially similar and linked to the same abstract idea"). All the claims challenged in this motion are directed to the same subject matter. Consequently, the claims should rise or fall together.

## IV. ARGUMENT

### A. The Claims of the '820 Patent Are Directed to an Abstract Idea

The claims of the '820 patent are directed to the abstract idea of providing Wi-Fi access in a public venue. This is confirmed both by the specification and Amended Complaint. The '820 patent states that the "present invention is generally related to a wireless communications network." '820 patent at 1:21–22. The specification explains that access points may provide radio frequency coverage as wireless repeaters, which spread Wi-Fi signal by extending the range of wired routers. *Id.* at 3:35–48. By placing

9

the repeaters to act as wireless access points in the areas of a venue that are not covered by the wired Wi-Fi infrastructure, the '820 patent explains that the access points "can provide connectivity throughout most of the venue space." *Id.* at 3:62–64.

If anything, the Amended Complaint only underscores that the '820 patent is directed to no more than this abstract idea. In a long-winded description, the Amended Complaint effectively states that the '820 patent is directed to providing Wi-Fi access in a public venue—"the '820 patent relates to wireless data communication systems including communication nodes set up to establish a communication network within public venues including sports and entertainment venues." *Id.* ¶ 8. The Amended Complaint goes on to describe this same concept in different ways, without ever explaining why using off-the-shelf communications equipment is novel (because it is not).

The Federal Circuit has routinely held similar claims to be directed to an abstract idea. For example, in *Affinity Labs* the court considered a patent for a broadcast system that claimed the "function of wirelessly communicating regional broadcast content to an out-of-region recipient." 838 F.3d at 1258 (Fed. Cir. 2016). Although the claim recited physical components, such as cellular telephones, a graphical user interface, and a broadcasting system, the court found that the physical components were generic computer components that failed to show the claim was not directed to an abstract idea. *Id.* at 1261; *see also Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709 (Fed. Cir. 2014) (finding that although some limitations of the claims provided particularity, the "concept embodied by the majority of the limitations describe[d] only the abstract idea of showing an advertisement before delivering free content"). Further, those components were merely

used to achieve a result of the claim: "the conveyance and manipulation of information using wireless communication and computer technology." *Affinity Labs*, 838 F.3d at 1261; *see also TLI Commc'ns*, 823 F.3d at 611 ("[T]he specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner."). Consequently, the court found that the claim was directed to the abstract idea of providing out-of-region access to regional broadcast content. *Affinity Labs*, 838 F.3d at 1258.

The claims of the '820 patent are no different. Although claim 1 recites a server managing data and self-contained pods that include wireless communications electronics and an integrated antenna, these are merely the well-known components required to provide wireless access points across a public venue. '820 patent at 8:54–9:7. As with the claims in *Affinity Labs*, where the patent claimed a general concept without offering a technological means of effecting that concept, the Court should find that the claims of the '820 patent are directed to providing Wi-Fi access in a public venue without offering any specific means of effecting that abstract idea. *See also, e.g., Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").

Additionally, limiting the claims of the '820 patent to wireless access points in large venues or to self-contained pods does not somehow transform the abstract idea of providing Wi-Fi access to patent eligible subject matter. In fact, that argument is foreclosed by the

Federal Circuit's holding in *Affinity Labs*. There, the court expressly held that "merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Affinity Labs*, 838 F.3d at 1259. In *Affinity Labs*, the claims' restriction of wireless delivery of regional broadcast content to cell phones was not enough to show that the claims were not directed to an abstract idea. *Id*. at 1258–59. Likewise, the fact that the wireless Wi-Fi access points of the '820 patent are confined to use by hand-held devices in large entertainment venues or self-contained pods, does not preclude a finding that the claims are directed to the abstract idea of providing Wi-Fi access in public venues.

Furthermore, neither the specification of the '820 patent, nor the Amended Complaint, identify a technological problem to which the claimed invention presents a technological solution. While the Federal Circuit has recognized that a claim is not directed to an abstract idea when it presents a technological solution to a technological problem or an improvement to computer technology, that is not the case here. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014). The specification of the '820 patent notes that wireless repeaters can overcome signal impairments, but critically, the specification does not offer an improvement to wireless repeaters. *See, e.g.*, *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019) ("[T]he specification never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could. Nor does the specification suggest that the invention involved overcoming some sort of technical difficulty in adding networking capability to the charging stations."). Rather, the specification and claims merely recognize

that existing wireless repeaters should be used in order to provide wireless access points across a venue. '820 patent at 3:62-64 ("The placement of a repeater between the covered and uncovered areas, however, can provide connectivity throughout most of the venue space."); see also *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) ("[The claims] fail to recite a specific solution to make the alleged improvement—conserving bandwidth while preserving quality—'concrete' and at most recite abstract data manipulation.").

Although the Amended Complaint alleges that "older venues often require retrofitting to incorporate wireless communications equipment," and "lack the 'built-in' wireless data communications infrastructure necessary to support" wireless hand held devices, this is not a technological problem. Am. Compl. ¶¶ 8–9. As with the specification of the '820 patent, the allegations of the Amended Complaint do not identify any technological problems with wireless repeaters that the invention purports to improve. The allegations of the Amended Complaint merely reiterate what the specification teaches: that traditional wireless repeaters can be implemented to provide wireless access points across a venue. *Id.*

Finally, the Federal Circuit has made clear that "[a]t step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'" *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (omissions in original). For example, in *ChargePoint,* the Federal Circuit held that a claim directed to using networked charging stations in order to facilitate

communications between electric vehicles and charging stations, would "preempt the use of any networked charging stations." 920 F.3d at 769. Likewise, the claims of the '820 patent would preempt the use of wireless access points and repeaters to provide Wi-Fi access in any venue. *See also, e.g.*, *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F. 3d 1371, 1379 (Fed. Cir. 2015) ("[P]reemption may signal patent ineligible subject matter . . . ."). As a result, it is clear that the claims of the '820 patent are directed to an abstract idea.

**B.    The Claims Lack Any Inventive Concept That Would Transform Them to Patentable Subject Matter**

**1.    *The Independent Claims Add Nothing Inventive***

Turning to step two of the *Alice* framework, the independent claims (claims 1, 8, and 15) "do[] not include an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention. *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021). Rather, the independent claims only recite generic computer components (a "server" and multiple "pods including wireless communications electronics and an integrated antennae…to operate as a wireless access point") and generic computer functions ("sustaining bi-directional communication with said at least one server" and "provid[ing] enhanced communications capacity for and data network access by said hand held wireless devices"). '820 patent at 8:65–9:7.

Step two is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 573 U.S. at 225) (alteration in

original). Here, the claims are completely devoid of an inventive concept that would transform the claimed abstract idea into patent-eligible subject matter.

The server is described in the specification in only the most general and generic terms. *See, e.g.*, *id*. at 7:63–67 ("Video captured by cameras 570 located throughout the sports and entertainment venue 500 is generally provided to enterprise equipment 530 located at the venue to manage recorded content such as a server."); *id*. at 8:7–10 ("Content from remote servers 560 can also be provided to hand held devices 210 via wired and wireless data networks 550 servicing the venue."). Generic references to servers do not amount to an inventive concept sufficient to make an invention patentable. *TLI Commc'ns*, 823 F.3d at 613 ("We agree with the district court that the claims' recitation of a 'telephone unit,' a 'server,' an 'image analysis unit,' and a 'control unit' fail to add an inventive concept sufficient to bring the abstract idea into the realm of patentability.").

Likewise, the self-contained pods recited in the claims of the '820 patent utilize only conventional technology. The pods utilize wireless repeaters as a way to overcome RF attenuation, but nothing in the specification suggests that wireless repeaters were unknown or unconventional at the time of the invention. '820 patent at 3:55–56. To the contrary, the specification uses the wireless repeaters in their known and conventional way. The claimed pods do not function any differently than other existing wireless repeaters, and therefore cannot provide an inventive concept to the claims. *See Affinity Labs*, 838 F.3d at 1263 ("The '379 patent does not provide an inventive solution . . . it simply recites that the abstract idea of remote delivery will be implemented using the conventional components and functions generic to cellular telephones.").

Nor does the combination of elements lead to a different conclusion. The specification of the '820 patent recognizes that several venues, including Yankee Stadium and Dallas Cowboy Stadium are enabled with "wireless network technology to enable video and data access for venue attendees using personal handheld devices." '820 Patent at 1:52–57. The only difference that the specification identifies between the "invention" of the '820 patent and the venues that are Wi-Fi enabled is that venues like Yankee Stadium and Dallas Cowboy stadium have cable-connected Wi-Fi access points, whereas the "invention" of the '820 patent is to use access points that are not connected by wires. *Id.* at 1:52-63. The specification points to well-known repeater Wi-Fi technology for avoiding cables, but the claims extend to cover *any* configuration of cable-free access points, including many invented after the issuance of the patent.

Thus, the specification demonstrates that the '820 patent simply applies a conventional, well-known system for a Wi-Fi network with wireless access points. This does not constitute an inventive concept and is instead merely the abstract idea of providing Wi-Fi access points across a network. *See ChargePoint*, 920 F.3d at 774 (quoting *BSG Tech*, 899 F.3d 1290) ("But network control is the abstract idea itself, and 'a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.'"); *see also Simio*, 983 F.3d at 1363–64 (rejecting a contention that although "implementing the executable process's functionality through *programming* was conventional or known . . . doing so with *graphics* in a simulation provides an inventive concept").

## 2. *The Dependent Claims Add Nothing Inventive*

The dependent claims also add nothing inventive. Six dependent claims (claims 2, 6, 9, 13, 16, 20) recite a rechargeable power source. But the specification makes clear that the rechargeable power source (such as "rechargeable lithium ion batteries or the like") are optional, and "[a]lternatively, power can be provided to the embedded pod via wiring accessible within the flooring 310 or walls 320." '820 patent at 5:9–11; *id.* at 8:25-28. Similarly, six dependent claims (claims 2, 6, 9, 13, 16, 20) recite a solar cell to charge the rechargeable power source. Again, the specification makes clear that this generic solar cell is optional. *Id.* at Abstract ("An optional solar cell can provide electrical power to charge the rechargeable power source."). These are routine components used in routine ways— power sources used to provide power to the wireless access points. They add no inventive concept to transform the abstract idea into eligible subject matter.

The remaining dependent claims also fail to add an inventive concept. The remaining six dependent claims (claims 4, 5, 11, 12, 18, 19) merely recite that the pod can be embedded in a wall or floor surface of the public venue. Once again, the specification makes clear that such a limitation is optional and is not an inventive concept of the claims.

## C. The Patent Claims Are Ineligible on the Pleadings

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility . . . on a Rule 12(b)(6) motion." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (citation omitted). In fact, the Federal Circuit found that claims like (or even more complex than) Arena IP's were ineligible on motions to dismiss in numerous cases involving network-connected electric

vehicle charging stations (*ChargePoint*), broadcast systems (*Affinity Labs*), systems for developing simulation models (*Simio*), methods and systems for video surveillance (*Hawk Tech.*), and methods and systems for categorizing and storing images (*TLI*). That is the proper outcome here, too, as there is no plausible allegation of inventiveness apart from the abstract idea.

The specification itself establishes that the claim elements provide no technological improvement. Section II.B, *supra* at 5–6. And no claim construction can change that, given the specification's admissions that the claims only require a generic server and well-known wireless communication electronics, merely providing Wi-Fi access in a public venue using those conventional components. *See, e.g.*, *Content Extraction*, 776 F.3d at 1349 (claims ineligible on pleadings even "construed in a manner most favorable to [patentee]").

In addition, the Amended Complaint does not (and cannot) identify any genuine technological improvements or inventive computer features apart from the abstract idea. Indeed, the Amended Complaint nowhere asserts that the claims require anything but conventional, routine, and well-understood computer hardware and software. The Amended Complaint alleges infringement against any "system supporting communication of video and data to hand held devices located within a public venue." Am. Compl. ¶ 16. Indeed, the specification forecloses any such allegation, failing to identify any technological improvement. Therefore, even if providing Wi-Fi access in a public venue was a "novel" idea (*id.* ¶ 8)—and it is not—it cannot supply any inventive concept or preclude finding the claims ineligible. *Simio*, 983 F.3d at 1363-64 (claims ineligible on

18

the pleadings even assuming features were new); *ECT*, 958 F.3d at 1182 (same); *Two-Way Media*, 874 F.3d 1340 (same); *SAP*, 898 F.3d at 1163 (same).

Although the Amended Complaint alleges that the '820 patent is an improvement over the prior art because it enables wireless communications in older venues, this is insufficient to supply an inventive concept. Am. Compl. ¶ 9. Application of wireless communications systems in older venues merely applies known, conventional computer components in a particular environment, which the Federal Circuit has made clear is not inventive. *See TLI Commc'ns*, 823 F.3d at 612 ("[T]hey are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two."). The Amended Complaint does no more than restate the specification without alleging any inventive concept can be found in the '820 patent.

In the handful of cases where the Federal Circuit found that factual issues precluded ineligibility on a motion to dismiss, the patents and complaints provided detailed allegations explaining how claimed features specifically improve computer or other technology itself. *See, e.g.*, *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316–18 (Fed. Cir. 2019) (complaint had "plausible and specific factual allegations that aspects of the claims are inventive"); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018) (complaint had "numerous allegations related to the inventive concepts"). That is not so here. The Amended Complaint, including its attached exhibits, fails to allege that the purported invention requires anything beyond conventional computer and network technology. *See generally* Am. Compl. Arena IP's patent claims do not focus

on any specific improvement in computer technology but instead on an abstract idea that requires only admittedly conventional and generic components. As in *TLI*, *ChargePoint*, *Affinity Labs*, *Simio*, *Hawktech*, and numerous other cases, Arena IP's patent and Amended Complaint do not, and cannot, "plausibly allege[]" facts showing § 101 eligibility. *See PersonalWeb Techs.*, 8 F.4th at 1319. Accordingly, the Amended Complaint should be dismissed in full with prejudice under § 101.

## V. CONCLUSION

The claims of the '820 patent are directed to an abstract idea and are implemented using conventional components and technology, arranged in a conventional way, which fails to rise to the level of an inventive concept sufficient to transform that abstract idea into patent-eligible subject matter. Accordingly, the claims are invalid under § 101 and the framework set out in *Alice*.

Dated: June 14, 2023

Respectfully submitted,

/s/ *Kyle A. Gardner*
Christopher J. Schwegmann
Attorney in Charge
Texas Bar No. 24051315
SDTX ID No. 609501
cschwegmann@lynnllp.com
Kyle A Gardner
Texas Bar No. 24116412
SDTX ID No. 3713279
kgardner@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: 214-981-3800

Facsimile:  214-981-3839

*OF COUNSEL:*

Colby Davis
Admitted Pro Hac Vice
colby.davis@allenovery.com
**ALLEN & OVERY LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone:  202-683-3834
Facsimile:  202-683-3999

***Attorneys for Defendant***
***New England Patriots, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2023, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF, which will serve electronic notification of such

filing to all counsel of record.

By: */s/ Kyle A. Gardner*
Kyle A. Gardner