**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ARENA IP, LLC,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | **Civil Action No. 4:23-cv-00428** |
| **v.** | ) | |
| | ) | |
| **NEW ENGLAND PATRIOTS, LLC,** | ) | |
|     **Defendant.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |

<u>**PLAINTIFF'S RESPONSE TO DEFEENDANT'S MOTION AND BRIEF IN SUPPORT**</u>
<u>**TO DISMISS FOR FAILURE TO STATE A CLAIM BASED ON 35 U.S.C. § 101**</u>

## TABLE OF CONTENTS

I.   RELEVANT FACTUAL BACKGROUND AND INTRODUCTION.............................. 1

II.  LEGAL STANDARD ........................................................................... 6

III. THE '820 PATENT CLAIMS PATENT-ELIGIBLE SUBJECT MATTER.............. 8

   A.   The Claims Are Not Directed to Abstract Ideas. ......................................... 9

   B.   The Claims Embody an Inventive Concept. .............................................. 16

IV.  REQUEST TO FILE AMENDED COMPLAINT ......................................... 17

V.   CONCLUSION ............................................................................... 17

TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347 (2014) ........................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 6

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016)..... 8

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341

 (Fed. Cir. 2016), ......................................................................................... 12

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ........................................................ 8

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ................................ 6

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ................. 7

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ............................................ 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289 (2012) ........ 7

*McRO*, 837 F.3d at 1312 ........................................................................................ 8

*Panasonic Corp. v. Magna Int'l., Inc.*, 6:21-cv-00319-ADA, 2022 WL 174513

 (W.D. Tex. Jan 20, 2022) ............................................................................. 6

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ........................................... 7

Plaintiff, Arena IP, LLC ("Arena" or "Plaintiff") files this Response to Defendant New England Patriots, LLC's ("Patriots" or "Defendant") Motion to Dismiss for Failure to State a Claim Based on 35 U.S.C. § 101 (the "Motion")[1] showing the Court that it should be denied because the claims are patent eligible.

## I.    RELEVANT FACTUAL BACKGROUND AND INTRODUCTION[2]

On November 27, 2012, U.S. Patent No. 8,320,820 ("the '820 patent") entitled "Self-contained Data Communication System Nodes As Stand-alone Pods Or Embedded In Concrete Walkways And In Walls At Public Venues Including Sports And Entertainment Venues" was duly and legally issued by the U.S. Patent and Trademark Office. The '820 patent relates to wireless data communications systems including communications nodes set up to establish a communication network within public venues including sports and entertainment venues.[3] The '820 patent also relates to wireless data communications systems including communications nodes comprising a communication network within a public venue supporting access to video and data by hand held devices also located within the public venue.[4]

According to the '820 patent specification, although the most modern venues includes built-in wireless infrastructure, older venues often require retrofitting to incorporate wireless communications equipment, or the equipment will only be temporary and must be installed just

---

[1] Doc. No. 20.

[2] Arena IP has asserted the '820 patent in other cases. However, other than the *Extreme Networks* cases cited in footnote 1 of Patriots' Motion, no other defendant has filed a motion to dismiss the pleadings pursuant to 35 U.S.C. § 101.

[3] Doc. No. 19-1 (the '820 patent) at column 1, lines 23 – 26 (C:1, L:23-26).

[4] *Id*. at C:1, L:26-30.

before an event.[5] Temporary use will be typical with multi-purpose venues.[6] The '820 patent provides a system that can simplify the temporary or retrofit placement of wireless data communications equipment as pods throughout sports and entertainment venues.[7]

Embodiments of the '820 patent provide numerous benefits over the prior art, including, but not limited to, providing systems that can enable video and data communications with multiple wireless hand held devices for older entertainment venues, and/or for any public venues where data access is only needed temporarily or long-term.[8] The specification states that many entertainment venues are older and lack the "built-in" wireless data communications infrastructure necessary to support large scale hand held device access to live video recorded by cameras at entertainment venues and associated entertainment data.[9] The specification further states that some entertainment venues may only require temporary installations of wireless video and data communications capabilities for a special event.[10] However, in accordance with the '820 patent, communications electronics can be provided within sports and entertainment venues in the form of self-contained pods[11] that enable video and data communications with multiple wireless hand held devices for older entertainment venues, and/or for any public venues where data access is only needed temporarily or long-term.[12]

A wireless data communications system node 100 is illustrated in FIG. 1 of the '820 patent. As illustrated in FIG. 2 of the '820 patent, a sports and entertainment venue 200 can include

---

[5] *Id*. at C:3, L:66 to C:4, L3.
[6] *Id*. at C:4, L3-4.
[7] *Id*. at C:4, L4-7.
[8] *Id*. at C:1, L:67 to C:2, L-3.
[9] *Id*. at C:1, L:58-63.
[10] *Id*. at C:1, L:63-66.
[11] *Id*. at C:4, L:8-9.
[12] *Id*. at C:1, L:67 to C:2, L-3.

wireless data communications system nodes 100 distributed around and throughout the sports and entertainment venue 100 for establishing a wireless communication network in communication with hand held devices 210 used by spectators within sports and entertainment venue 100.[13] The wireless communications network supported by the pods 100 enable handheld devices 210 to receive multiple perspective of an event 230 in video captured within the venue.[14]

---

[13] *Id*. at C:4, L:44-52.
[14] *Id*. at C:4, L:53-56.



FIG. 1

FIG. 2

As shown in the claim charts[15] attached to the First Amended Complaint ("Complaint"),[16] claim 1 recites:

---

[15] Doc. No. 19-2, 19-3.

[16] Doc. No. 19.

A system providing communications capacity and supporting the communications of video and data to hand held wireless devices located throughout a sports and entertainment venue, comprising:

at least one server managing data including video of various perspectives of an activity captured by video cameras located throughout the sports and entertainment venue; and

more than one self-contained pod including wireless communications electronics and an integrated antennae for said self-contained pod to operate as a wireless access point sustaining bi-directional communication with said at least one server, said more than one self-contained pod deployed as a matrix of communications nodes throughout a sports and entertainment venue to provide enhanced communications capacity for and data network access by said hand held wireless devices being used by spectators located throughout the sports and entertainment venue and providing access to said data from the at least one server to said hand held wireless devices in use by the spectators

Claim 8 recites:

A system supporting the communications of hand held wireless devices located throughout a sports and entertainment venue, comprising more than one self-contained pod including wireless communications electronics and an integrated antennae for said more than one self-contained pod to operate as a wireless access point and deployed as a matrix of communications nodes throughout said sports and entertainment venue to provide enhanced wireless communications capacity throughout the sports and entertainment venue and to support bi-directional communication of said hand held wireless devices used by spectators located throughout the sports and entertainment venue with at least one server to obtain access to data including the video from said at least one server, wherein said at least one server manages video of various perspectives of an activity captured by video cameras located throughout the sports and entertainment venue.

In addition, claim 15 recites:

A system supporting the communications of video and data to hand held wireless devices located throughout a public venue, comprising

more than one self-contained pod including wireless communications electronics and an integrated antennae

operating as a wireless access point and deployed as a matrix of communications nodes throughout the public venue to provide enhanced wireless communications capacity throughout the sports and entertainment venue and

to support bi-directional communication of the hand held wireless communication device used by spectators located throughout the sports and entertainment venue and

5

> provide data including video from at least one server accessed
> over a data network through said at least one contained in a self-
> contained pod by said hand held wireless devices located throughout
> the public venue. (Emphasis added).[17]

During prosecution of the '820 patent, the U.S. Patent and Trademark Office Examiner

stated that the prior art of record does not teach or disclose the features of claim 15.[18] Based on

claim amendments made to overcome prior art, the features of "more than one self-contained pod

including wireless communications electronics and an integrated antennae operating as a wireless

access point and deployed as a matrix of communications nodes throughout the public venue to

provide enhanced wireless communications capacity throughout the sports and entertainment

venue and to support bi-directional communication of the hand held wireless communication

device used by spectators located throughout the sports and entertainment venue" together with

the other claim features, placed claim 15 in condition for allowance.

## II.    LEGAL STANDARD

"A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely

granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)

(quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.

1982)). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim

that is plausible, not to evaluate the plaintiff's likelihood of success." *Panasonic Corp. v. Magna*

*Int'l., Inc.*, 6:21-cv-00319-ADA, 2022 WL 174513 (W.D. Tex. Jan 20, 2022) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

The Supreme Court articulated a two-step "framework for distinguishing patents that claim

laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible

---

[17] Doc. No. 19-1, page 15; column 10, lines 30-45 of the '820 Patent.
[18] Doc. No. 19-4, Notice of Allowance at p. 7.

applications of those concepts."[19]  At step one, the court must determine whether the claims are directed to one of the three patent-ineligible concepts.[20] If not, "the claims satisfy [Section] 101 and [the court] need not proceed to the second step."[21]  If the claims are directed to a patent-ineligible concept, the court must proceed to the second step of identifying an "inventive concept i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."[22]

At *Alice* step one, the courts determine whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217, 134 S.Ct. 2347. Courts conduct the abstract idea inquiry by analyzing the "focus" of the claim, i.e., its "character as a whole," to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020)  (citing *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018)).

Courts have routinely held software claims patent eligible under *Alice* step one when they are directed to improvements to the functionality of a computer or network platform itself.  For example, in *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, claims directed to an improved user interface that enabled users to more quickly access stored data and programs in

---

[19] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78, 132 S. Ct. 1289 (2012).
[20] *Alice*, 573 U.S. at 217.
[21] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).
[22] *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

small-screen electronics were held patent eligible. 880 F.3d 1356, 1359–63 (Fed. Cir. 2018). The claimed invention in *Core Wireless* "improve[d] the efficiency of using the electronic device by bringing together a limited list of common functions and commonly accessed stored data, which can be accessed directly from the main menu." *Id.* at 1363. Therefore it was held that "the claims [we]re directed to an improvement in the functioning of computers, particularly those with small screens." *Id.*

At step two, the court must "look to both the claim as a whole and the individual claim elements" to determine whether they "amount[ ] to significantly more than a patent upon the ineligible concept itself"[23] "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept."[24] Instead, the claim elements must involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry."[25] "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."[26] Applying these standards, the claims of the '820 patent are patent eligible.

## III.    THE '820 PATENT CLAIMS PATENT-ELIGIBLE SUBJECT MATTER

### A.    Claim 1 is not representative of all claims

Arena disagree with Patriots assertion that Claim 1 of the '820 patent is representative of all claims of the '820 patent.  Claim 1 has claims 2-7 depending therefrom that each add additional concrete

---

[23] *McRO*, 837 F.3d at 1312.
[24] *Alice*, 573 U.S. at 222.
[25] *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73.
[26] *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

and technical elements and steps requiring separate patentability analysis.  Independent claims 8 and 15 (as well as the respective dependent claims) also have additional concrete and technical elements and steps requiring separate patentability analysis. Thus, Claim 1 is not representative of all claims of the '820 patent.

### B.  The Claims Are Not Directed to Abstract Ideas.

Patriots argue that the "claims of the '820 patent are directed to the abstract idea of providing Wi-Fi access in a public venue."[27] But Patriot interprets the '820 patent too narrowly. A Section 101 analysis must "'avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (citation omitted).

Patent-eligible subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  There are only three narrow, judicially crafted exceptions, including (as relevant here) abstract ideas.  E.g., *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013).  The Supreme Court has reiterated its reluctance to broadly apply these three narrow exceptions: "[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law.  At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"  *Alice*, 573 U.S. 208, 217 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (internal citation omitted)).

The claims of the'820 patent are not abstract under step one of the *Alice* test. Claims that are directed to technical improvements rather than such things as mathematical algorithms or fundamental economic practices are not abstract under step one of *Alice*.  At step one of the *Alice*

---

[27] Doc. 20 at 9.

framework a court looks "to whether the claims 'focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" *Cardionet, LLC v. Infobionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) (quoting *McRO*, 837 F.3d at 1314). Courts should also "consider the patent's written description, as it is 'helpful in illuminating what a claim is 'directed to.'" *Id.* (quoting *Chamberlain Group, Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019)); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

Illustrative is *EcoServices, LLC v. Certified Aviation Serv., LLC*, 830 Fed. Appx. 634 (Fed. Cir. 2020). In *EcoServices*, one of the patents at issue entitled "Automated Detection and Control System and Method for High Pressure Water Wash Application and Collection Applied to Aero Compressor Washing" described a system for automatically controlling a washing procedure according to the requirements of the particular aircraft engine being washed. *Id.* at 636. The automated system solved the problem of human error in the conventional engine washing process. Independent claim 1 recited: a "system for washing turbine engines comprising: a washing unit …; an information detector configured to gather information related to engine type; and a control unit configured to accept the information related to engine type from the information detector and to determine a washing program to be used. . . . ." *Id.* at 636. The court rejected the appellant's argument that the claims of the patent at issue were "directed to the abstract idea of using a generic computer to automate the conventional washing process traditionally performed by human operators" and that the claimed invention was "simply the idea of using a computer to replace human operators in a known process." *Id.* at 641. Instead, the court concluded that "the claims are directed to a specific system that improves jet engine

washing. . . .In other words, the claims of the '262 patent do not recite the mere desired result of automated jet engine washing, but rather, recite a specific solution for accomplishing that goal. *Id.* at 642; citing *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019).

Similarly, the claims of the '820 patent are not directed to the abstract idea of providing Wi-Fi access in a public venue, as Patriot alleges. Rather, the claims of the '820 patent are directed to improvements in systems that can enable video and data communications with multiple wireless hand held devices for older venues that lack the "built-in" wireless data communications infrastructure necessary to support large scale hand held device access to live video recorded by cameras at entertainment venues and associated entertainment data.[28]

Patriot's characterization of the claims of the '820 patent as abstract ignores the unique combination and configuration of components that comprise a system that, prior to the claims in the '820 patent, were not disclosed. (See, e.g., *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347-49 (Fed. Cir. 2017) ("These claims are not merely directed to the abstract idea of using mathematical equations for determining the relative position of a moving object to a moving reference frame, . . . . Rather, the claims are directed to systems and methods that use inertial sensors in a non-conventional manner to reduce errors in measuring the relative position and orientation of a moving object on a moving reference frame.") (internal quotation marks omitted). Such is the case here. As noted by the Examiner:

> the prior art of record does not disclose more than one self-contained pod including wireless communications electronics and an integrated antennae operating as a wireless access point and deployed as a matrix of communications nodes throughout the public venue to provide enhanced wireless communications capacity throughout the sports and entertainment venue and to support bi-directional communication of the hand held

---

[28] Doc. 19-1 at C:1, L:58 to C:2, L-3.

wireless communication device used by spectators located throughout the sports and entertainment venue" together with the other claim features.[29]

Therefore, the claims relate not to the abstract idea of providing Wi-Fi access in public venues, but to providing a wireless data communications systems including communications nodes set up to establish a communication network, and to wireless data communications systems including communications nodes comprising a communication network within a public venue supporting access to video and data by hand held devices also located within the public venue.[30] Accordingly, considering the claims at issue in their entirety, their character as a whole is not directed to an abstract idea.

In further support of patent eligibility, the claims are directed to concrete steps. To properly evaluate whether asserted claims "are directed to a patent-eligible concept,"[31] a court must examine "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."[32] In other words, abstractness is determined by analyzing the claim as a whole, not whether each element standing alone is abstract.[33] Patriot has failed to consider the claims as a whole and has over-generalized the '820 patent.

Taking the claim as a whole, the focus is a communications electronics that are provided within venues in the form of self-contained pods that enable enhanced video and data communications with multiple wireless hand held devices for any public venues where data access is needed. The focus is supported by the Abstract:

---

[29] Doc. 19-4, at 7-8.

[30] Doc. 19, ¶ 8; Doc. 19-1, at C:1, L:23-30, and Claims 1 and 8.

[31] *Alice Corp. Pty. Ltd.*, 573 U.S. at 218.

[32] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).

[33] *See e.g., Alice Corp.*, 573 U.S. 208, 219, 134 S. Ct. 2347, 2359 (2014); *Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059, 1067 (D. Nev. 2018).

(57)          **ABSTRACT**

A system supports communications of video and data to hand held devices located within a public venue (e.g., sports stadium). At least one pod includes wireless communications electronics and an integrated antennae deployed as a communications node within the public venue and provides data including video through a data network from at least one server to hand held wireless devices located in the public venue. The pod can include a rechargeable power source sustaining self-contained operation of the wireless communication electronics. An optional solar cell can provide electrical power to charge the rechargeable power source. A pod can be embedded in the wall or floor surface of said public venue and can be provided in the form of a core hole plug.[34]

Assessing the focus of the claims from the Abstract is proper as the directed to inquiry may also involve looking to the Abstract or patent specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention.[35]

Further support for this focus is provided, for example, in claim 1:

The invention claimed is:

1. A system providing communications capacity and supporting the communications of video and data to hand held wireless devices located throughout a sports and entertainment venue, comprising:

at least one server managing data including video of various perspectives of an activity captured by video cameras located throughout the sports and entertainment venue; and

more than one self-contained pod including wireless communications electronics and an integrated antennae for said self-contained pod to operate as a wireless access point sustaining bi-directional communication with said at least one server, said more than one self-contained pod deployed as a matrix of communications nodes through-

---

[34] Doc. No. 19-1, Abstract.

[35] *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) *citing TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015) (in the step one analysis, pointing to statements from the specification that supported the identified focus was the key discovery described in the patent).

> out a sports and entertainment venue to provide enhanced communications capacity for and data network access by said hand held wireless devices being used by spectators located throughout the sports and entertainment venue and providing access to said data from the at least one server to said hand held wireless devices in use by the spectators. [36]

As well, the specification of the '820 patent provides further support for the focus in the Specification where it specifies that:

> The present invention is generally related to a wireless communications networks. More particularly, the present invention is related to wireless data communications system communications nodes set up to establish a communication network within public venues including sports and entertainment venues. The present invention is also related to wireless data communications systems including communications nodes comprising a communication network within a public venue supporting access to video and data by hand held devices also located within the public venue. [37]

> Although new stadiums are being built with wireless capabilities, still many entertainment venues are older and lack the "built-in" wireless data communications infrastructure necessary to support large scale hand held device access to live video recorded by cameras at entertainment venues and associated entertainment data. Furthermore, some entertainment venues may only require temporary installations of wireless video and data communications capabilities for a special event. For the foregoing reasons, there is a need to provide systems that can enable video and data communications with

---

[36] Doc. 19-1 at C:8, L:53 to C:9, L-7.

[37] Id. at C:1, L:21-30.

> multiple wireless hand held devices for older entertainment
> venues, and/or for any public venues where data access is
> only needed temporarily or long-term. The present invention
> provides a solution for this need.                            38

The specification also describes the focus, and the concrete steps behind it, as follows:

> Communications electronics can be provided within sports
> and entertainment venues in the form of self-contained pods.
> As illustrated in FIG. **1**, a pod **100** can include wireless
> communications electronics **110**, an integrated antennae **120**,
> rechargeable power source **130** and an optional solar power
> cell **140**. The pod **100** can be provided in the form of a
> movable, weatherproof container that can be placed in stra-
> tegic locations throughout a venue and remain protected from
> weather and vandalism. FIG. **1** depicts a pod in the form of a
> barrel, although the shape of a pod **100** should not be
> restricted. The size of the pod **100** is dependent on compo-
> nents used to provide battery-operated wireless data commu-
> nications. WiFi transceivers and repeaters comprising the
> wireless communications electronics **110**, for example, typi-
> cally do not require much space; however, the size of
> rechargeable batteries **130** required to power the wireless
> communications electronics **110** will depend on the length of
> use and continuous power required for the wireless commu-
> nications electronics **110**. In daytime deployments where
> pods might be exposed to sunlight, an optional solar cell **140**
> can be located at the top surface of the pod container where
> the solar cell **140** can obtain maximum sunlight and can
> provide a trickle charge to rechargeable batteries **130** located
> within the pod **100**. Outdoor stadiums, such as racing venues,
> football stadiums, or cricket stadiums, as well as large amuse-
> ment parks and outdoor public gathering places, would ben-
> efit from a solar powered communications pod **100**. Solar
> power can extend operation time for the pod **100**. Solar cells
> can vary in size, depending on the surface area of the pod's
> top surface. Weather resistance is also an important consid-
> eration for the communications pods **100**. A housing that
> allows ventilation and minimizes water saturation an inter-
> ference with electronics and power sources contained therein
> would ideally be utilized for pods **100**. Housing used for     39

Thus, the focus of the '820 patent and its claims is a concrete, technical solution to providing data

communications were not previously possible, namely communication electronics provided within

---

[38] Id. at C:1, L:58 to C:2, L:4.

[39] *Id*. at C:4, L:8-41.

venues in the form of self-contained pods that enable enhanced video and data communications with multiple wireless hand held devices for any public venues where data access is needed, which was. not solved by the prior art, and not an "abstract idea of searching a database in response to an error," as Penney OpCo baselessly claims.

### C. The Claims Embody an Inventive Concept.

Even if the claims do not satisfy Alice step one, the claims satisfy Alice step two.  In *Alice*,[40] the Supreme Court indicated that a claim – even one directed to an abstract idea – is patentable where the claim supplies a "'new and useful' application of the idea" (*Alice* at 222), "improve[s] an existing technological process," (*id.* at 223), or is "more than a drafting effort designed to monopolize" the abstract idea (*id.* at 222).

Patriots argue that the independent claims (claims 1, 8, and 15) recite only generic computer components and generic computer functions and that use of such generic components render the invention patent ineligible.[41] However, the Federal Circuit has rejected this proposition, stating that "we are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims."[42] Indeed, the Federal Circuit held in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016), that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." As explained below, the USPTO recognized that the system disclosed in the '820 patent was not disclosed by the prior art, and issued the patent/

Moreover, Patriot's argument that the self-contained pods utilization of "conventional technology" are not inventive is wrong. The '820 patent contains many prior art references,

---

[40] 537 U.S. 208.
[41] Doc. 20 at p. 14-15.
[42] *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1338 (Fed. Cir. 2016).

including more than 30 patents and applications, and nine other publications. But, contrary to the Patriots' arguments, the USPTO found that the system disclosed by the '820 patent was patentable and not disclosed by the prior art. The Defendant has erred it is interpretation of the claims, and the claims should be deemed as meeting the requirements for Alice step two. Notably, Patriots fail to even mention the prosecution history and the examiner's comments that led to the issuance of the '820 patent.

The claims included an inventive concept, and the '820 patent claims satisfies *Alice* step two as well as step one.  Accordingly, the claims include patentable subject matter.

## II.    REQUEST TO FILE AMENDED COMPLAINT

Arena believes that it has sufficiently demonstrated that the '820 patent is patent eligible. However, should the Court be inclined to grant any portion of Defendant's Motion, Arena respectfully requests an opportunity to file an amended complaint to correct any identified pleading issues.

## III.    CONCLUSION

For the foregoing reasons, Arena respectfully requests that the Court deny Defendant's Motion to Dismiss.   In the alternative, leave to amend the Complaint without prejudice is requested.

Dated: July 28, 2023                    Respectfully submitted

**Ramey LLP**

*/s/William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

17

*Attorneys for Arena IP, LLC*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules, counsel for Plaintiff, conferred with counsel for defendant on July 5, 2023. Plaintiff is unopposed to the extension.

*/s/ William P. Ramey, III*
William P. Ramey, III

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and LR5, I hereby certify that all counsel of record who have appeared in this case are being served on this day of July 28, 2023, with a copy of the foregoing via CM/ECF Filing.

*/s/ William P. Ramey, III*
William P. Ramey, III

18