IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARENA IP, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>NEW ENGLAND PATRIOTS LLC,<br><br>    Defendant. | Civil Action No. 1:23-cv-13006-MJJ |

**DEFENDANT NEW ENGLAND PATRIOTS LLC'S SUPPLEMENTAL
BRIEF IN SUPPORT OF THE MOTION TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM BASED ON 35 U.S.C. § 101</u>**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l*,
 573 U.S. 208 (2014) ................................................................................................... 1, 2, 5

*Ask Sydney, LLC v. Snap, Inc.*,
 No. 2:23-cv-06298-MCS-BFM (C.D. Cal. Oct. 18, 2023) ..................................................... 1

*Bilski v. Kappos*,
 561 U.S. 593 (2010) ............................................................................................................. 1

*EscapeX IP LLC v. Block, Inc.*,
 652 F. Supp. 3d 396 (S.D.N.Y. 2023) .................................................................................. 1

*EscapeX IP LLC v. Google LLC*,
 No. 22-cv-08711-VC, 2023 WL 5257681 (N.D. Cal. Aug. 16, 2023) .................................. 1

*Front Row Techs., LLC v. Cisco Systems, Inc.*,
 No. 6:23-cv-00035-AM (W.D. Tex. Sep. 13, 2023) ............................................................. 1

*Integrated Tech. Sols., LLC v. Iracing.Com Motorsport Simulations, LLC*,
 630 F. Supp. 3d 276 (D. Mass. 2022) .................................................................................. 2

*KCG Techs., LLC v. Carmax Auto Superstores, Inc.*,
 424 F. Supp. 3d 196 (D. Mass. 2019) .................................................................................. 3

*NetSoc, LLC v. Chegg Inc.*,
 No. 18-cv-10262 (RA), 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020) ................................ 1

*NetSoc, LLC v. Match Group, LLC*,
 No. 3:18-cv-01809-N (N.D. Tex. Jul. 22, 2019) .................................................................. 1

*Riggs Tech. Holdings v. Cengage Learning, Inc.*,
 581 F. Supp. 3d 357 (D. Mass. 2022),
 aff'd 2023 WL 193162 (Fed. Cir. Jan. 17, 2023) .........................................................*passim*

*Smart Software, Inc. v. PlanningEdge, LLC*,
 192 F. Supp. 3d 243 (D. Mass. 2016) .................................................................................. 3

*Street Spirit IP, LLC v. Meta Platforms, Inc.*,
 __ F. Supp. 3d __, 2023 WL 4869594 (N.D. Cal. Jul. 31, 2023) ......................................... 1

*WPEM, LLC v. SOTI Inc.*,
 No. 2:18-cv-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020),
 aff'd 837 F. App'x 773 (Fed. Cir. 2020) ............................................................................... 1

**Statutes**

35 U.S.C. § 101 ............................................................................................................... 1, 2

The claims of the sole asserted patent in this action—U.S. Patent No. 8,320,820 (the "'820 patent")—are directed to an abstract idea that is ineligible for patent protection—namely, providing Wi-Fi access in a public venue. The Supreme Court has repeatedly emphasized that such ideas cannot be removed from the public domain and owned as private property because they are basic tools in the "storehouse of knowledge" that are "free to all . . . and reserved exclusively for none." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *see also Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216-18 (2014). Here, Plaintiff Arena IP, LLC ("Arena IP") attempts to preempt the entire concept of Wi-Fi access in public venues, alleging that a range of companies (including Extreme Networks, Verizon, AT&T, Aruba Networks, Cisco, Ericsson, Boingo Wireless, CommScope, and the Minnesota Vikings) infringe its patent with no regard to how each implements such Wi-Fi access. But the patent laws do not allow such broad assertions. Indeed, district courts across the country, including this Court, have consistently invalidated similarly overbroad patents asserted by Plaintiff's counsel,[1] ending his improper litigation campaigns.[2]

The claims of the '820 patent are invalid under 35 U.S.C. § 101. Thus, Defendant New England Patriots LLC (the "Patriots") respectfully requests the Court dismiss this case.

---

[1] *See Riggs Tech. Holdings v. Cengage Learning, Inc.*, 581 F. Supp. 3d 357, 361 (D. Mass. 2022) (finding patent asserted by Ramey LLP invalid under § 101), *aff'd* 2023 WL 193162 (Fed. Cir. Jan. 17, 2023); *see also, e.g., Street Spirit IP, LLC v. Meta Platforms, Inc.*, __ F. Supp. 3d __, 2023 WL 4869594 (N.D. Cal. Jul. 31, 2023) (same); *EscapeX IP LLC v. Block, Inc.*, 652 F. Supp. 3d 396 (S.D.N.Y. 2023) (same); *Ask Sydney, LLC v. Snap, Inc.*, No. 2:23-cv-06298-MCS-BFM (C.D. Cal. Oct. 18, 2023) (same); *Front Row Techs., LLC v. Cisco Systems, Inc.*, No. 6:23-cv-00035-AM (W.D. Tex. Sep. 13, 2023) (same); *NetSoc, LLC v. Match Group, LLC*, No. 3:18-cv-01809-N (N.D. Tex. Jul. 22, 2019) (same).

[2] *See, e.g., EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 WL 5257681 (N.D. Cal. Aug. 16, 2023) (finding plaintiff tried to "force a modest settlement by pestering [defendant] with a frivolous suit on the assumption that [defendant] will prefer to capitulate than fight back."); *NetSoc, LLC v. Chegg Inc.*, No. 18-cv-10262 (RA), 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020) ("Plaintiff ignored the deficiency in its pleading"); *WPEM, LLC v. SOTI Inc.*, No. 2:18-cv-00156-JRG, 2020 WL 555545, at *6 (E.D. Tex. Feb. 4, 2020) (plaintiff "conducted no pre-filing investigation at all into the validity and enforceability of the Asserted Patent"), *aff'd* 837 F. App'x 773 (Fed. Cir. 2020).

**I.      THIS CASE SHOULD BE DISMISSED UNDER THIS COURT'S PRECEDENT**

"'Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is an issue of law.'" *Integrated Tech. Sols., LLC v. Iracing.Com Motorsport Simulations, LLC*, 630 F. Supp. 3d 276, 281 (D. Mass. 2022) (quoting *Content Square SAS v. Decibel Insight Ltd.*, 552 F. Supp. 3d 165, 172 (D. Mass. 2021)). "Though the usual basis for a 12(b)(6) motion is the plaintiff's failure to plead sufficient facts in its complaint, a motion to dismiss may sometimes be premised on the inevitable success of an affirmative defense, such as patent invalidity." *Riggs*, 581 F. Supp. 3d at 360 (citations and quotations omitted). "Dismissal is warranted if the only plausible reading of the patent the plaintiff alleges was infringed is one that demonstrates that the patent claims cover subject matter that is not eligible for patenting." *Id.*

To determine patent-ineligibility under § 101, the Supreme Court in *Alice* set forth the now familiar two-step test. At step one, the court must determine whether the character of the claims at issue, as a whole, are directed to an abstract idea. 573 U.S. 208 at 221-27. At step two, the court considers whether the elements of the claims, individually or in combination, add no inventive concept. *Id.* Here, the language of the claims, specification of the patent, allegations in the Complaint, and even Arena IP's Opposition all confirm that the '820 patent cannot pass the *Alice* test. Doc. No. 20 at 14-22 (Defendant's Motion); Doc. No. 25 at 8-16 (Defendant's Reply).

First, the focus of the claims is plainly directed to the abstract idea of providing Wi-Fi access in a public venue. In the computer networking context, this inquiry can turn on whether the claims focus on "a specific improvement in computer capabilities, rather than an abstract idea for which computers are invoked merely as a tool." *Riggs*, 581 F. Supp. 3d at 361 (quotations omitted). As the Opposition repeatedly acknowledges, "the present invention" is no more than "communications nodes set up to establish a communication network within public venues

2

including sports and entertainment venues." Doc. No. 23 at 15. Indeed, the "problem" that the patent seeks to solve is merely "a need to provide systems that can enable video and data communications with multiple wireless hand held devices for older entertainment venue." *Id.* Thus, the '820 patent does not solve a technological problem or improve computer technology; instead, the '820 patent uses routine, generic networking capabilities as a tool. *See Smart Software, Inc. v. PlanningEdge, LLC*, 192 F. Supp. 3d 243, 246 (D. Mass. 2016) ("courts will [] look for an improvement to the functioning of the computer itself").

Second, the claims merely implement this abstract idea using generic computer technology—"hand held wireless device," "server," "wireless communications electronics," "integrated antennae," "communication nodes"—and therefore do not contain an inventive concept sufficient to confer eligibility. The patent itself admits that these are off-the-shelf generic components. '820 patent at 3:38–42 ("Wireless repeaters . . . [including] stand-alone 802.11 wireless repeaters on the market," and "access points [that] have a built-in repeater mode."). In fact, this Court has also confirmed that such component are conventional. *See KCG Techs., LLC v. Carmax Auto Superstores, Inc.*, 424 F. Supp. 3d 196, 202 (D. Mass. 2019) (granting dismissal where patent "merely discloses conventional computer components . . . that include a computer network, the Internet, Bluetooth, WiFi, and cellular technology").

## II.  THIS COURT HAS FOUND FAR MORE DETAILED CLAIMS ABSTRACT

The claims of the '820 patent are far more abstract than the claims of other patents this Court has found unpatentable. For example, in *Riggs Technology Holdings, LLC v. Cengage Learning, Inc.*, the Court addressed the patentability of claims directed to "Methods and Systems for Managing the Provision of Training Provided Remotely Through Electronic Data Networks to Users of Remote Electronics Devices." 581 F. Supp. 3d at 359. Claim 1 of the *Riggs* patent and

3

the '820 patent are shown below.

| *Riggs* Patent | U.S. Patent No. 8,320,820 |
|---|---|
| 1. A method of managing training completed remotely at a hand held device, said method comprising the step of:<br><br>receiving **at a training server** training data transmitted to the training server through a data network **from a user of a hand held device**, the training data representing training taken by the user at [sic] hand held device;<br><br>receiving **identifying information** for the user of a hand held device concurrently with the training data file;<br><br>identifying the user of the hand held device;<br><br>authenticating the identify [sic] of the user of the hand held device by **requesting authentication data** from the user and comparing the authentication data with a **master user identification template** containing authentication data associated with the user and accessible by the training server to determine if said comparison authenticates the user's identify [sic] as an authorized trainee;<br><br>recording the training data in memory associated with the training server;<br><br>locating at least **one training file** contained within the training data;<br><br>determining status of the training file by comparing the training file with an associated master training template accessible from memory by the training server, the status including a determination if training represented by the training file meets a set criterion including at least one of: pending, incomplete, failed, passed; and<br><br>recording training status in **memory**. | 1. A system providing communications capacity and supporting the communications of video and data to hand held wireless devices located throughout a sports and entertainment venue, comprising:<br><br>at least **one server managing data** including video of various perspectives of an activity captured by video cameras located throughout the sports and entertainment venue; and<br><br>**more than one self-contained pod** including wireless communications electronics and an integrated antennae for said self-contained pod **to operate as a wireless access point** sustaining bi-directional communication with said at least one server,<br><br>said more than one self-contained pod **deployed as a matrix of communications nodes** throughout a sports and entertainment venue to provide enhanced communications capacity for and data network access by said hand held wireless devices being used by spectators located throughout the sports and entertainment venue and providing access to said data from the at least one server to said hand held wireless devices in use by the spectators. |

At *Alice* step one, the Court considered the "elements of the claims and their character as a whole" and found that the claimed "advance" describes "an existing process (providing and managing training) and propose[s] using existing technology (devices which access networks and servers remotely and wirelessly) to achieve the abstract end-result at the heart of the patent (providing wireless, remote access to training programs)." *Id.* The analysis is materially same here. The claimed advance—"video and data communications . . . for older entertainment venues," Opp. at 2—describes an existing process (providing Wi-Fi access through communication nodes) and proposes using existing technology (off-the-shelf Wi-Fi access points or repeaters) to achieve the abstract end-result at the heart of the patent (providing Wi-Fi access in a public venue).

At *Alice* step two, the Court considered whether the claims contain an "inventive concept that can transform the abstract idea" and found that "the claimed components and features (e.g., 'training data,' 'server,' 'data network,' 'identifying information,' 'hand held device,' and 'authentication data')—none of which Riggs claims to have invented—are all generically defined and conventional." *Id.* at 362. Likewise, here, there is no inventive concept. The "self-contained pod" is generically defined as "including wireless communications electronics and an integrated antennae . . . **to operate as a wireless access point.**" '820 patent at cl. 1. And the "server" and "matrix of communication nodes" are conventional components and features. *Id.*

The '820 patent fails to claim patentable subject matter under the same analysis this Court conducted in *Riggs*—an analysis the Federal Circuit has affirmed. *Riggs*, 2023 WL 193162, at *4 (finding the "patent's specification admits that the claim elements are well-understood, routine, and convention, and thus the district court did not err in dismissing Rigg's complaint").

## III. CONCLUSION

Accordingly, the Court should dismiss the Amended Complaint with prejudice.

5

Dated: December 22, 2023						Respectfully submitted,

/s/ *Lisa K. Nguyen*
Lisa K. Nguyen
*Pro Hac Vice* Pending
lisa.nguyen@allenovery.com
**ALLEN & OVERY LLP**
550 High Street
Palo Alto, CA 94301
Telephone:  650-388-1724
Facsimile:  650-388-1717

Colby Davis
*Pro Hac Vice* Pending
colby.davis@allenovery.com
**ALLEN & OVERY LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone:  202-683-3834
Facsimile:  202-683-3999

William Wray, BBO No. 689037
**ALLEN & OVERY LLP**
One Beacon Street
Boston, MA 02108
Telephone:  857-353-3500
Facsimile:  857-353-4500

***Attorneys for Defendant***
***New England Patriots LLC***