UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARENA IP, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 23-13006-MJJ |
| NEW ENGLAND PATRIOTS, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM OF DECISION

March 27, 2024

JOUN, D.J.

On February 6, 2023, Plaintiff Arena IP, LLC ("Arena IP") filed suit against Defendant New England Patriots, LLC ("the Patriots") alleging infringement of its patent, U.S. Patent No. 8,320,820 ("the '820 Patent"). [Doc. No. 1]. On May 31, 2023, Arena IP amended its Complaint. [Doc. No. 19]. Shortly thereafter, on June 14, 2023, the Patriots filed a Motion to Dismiss for failure to state a claim based on 35 U.S.C. § 101. [Doc. No. 20].

Suit was initially filed in the U.S. District Court for the Southern District of Texas. [Doc. No. 1]. However, on December 7, 2023, the case was transferred *sua sponte* to the District of Massachusetts. [Doc. Nos. 29-31]. Both parties subsequently filed supplemental briefs based on First Circuit precedent. [Doc. Nos. 37, 42]. Upon consideration, for the reasons set forth below, the Patriots' Motion to Dismiss is GRANTED.

I.  BACKGROUND

On November 27, 2012, the U.S. Patent and Trademark Office issued the '820 Patent, entitled "Self-Contained Data Communication System Nodes as Stand-Alone Pods or Embedded in Concrete Walkways and in Walls at Public Venues Including Sports and Entertainment Venues." [Doc. No. 19 at ¶ 7; Doc. No. 19-1 at 2]. Arena IP owns the '820 Patent by assignment. [Doc. No. 19 at ¶ 7].

The '820 Patent notes that, at the time of writing, new sports and entertainment venues were being designed and built to incorporate wireless data communications infrastructure. [Doc. No. 19-1 at 11]. Older entertainment venues, however, lacked the "built-in" infrastructure "necessary to support large scale hand held device access to live video" and other entertainment data. [*Id*.]. And certain venues only required "temporary installations of such wireless video and data communications capabilities," for special events. [*Id*.]. The '820 Patent's claimed invention intends to address those latter circumstances by providing a system to establish a wireless data communication network within public venues, such as sports and entertainment venues, capable of providing "data including video through a data network from at least one server to hand held wireless devices located in the public venue." [*Id*. at 2].

The system consists of "self-contained communications system nodes," which may be provided as stand-alone pods or embedded in concrete walkways and walls, at public venues such as sports and entertainment venues. [*Id*. at 11]. The system provides "[a]t least one pod including "wireless communications electronics (e.g., wireless access point, repeaters) and an integrated antennae that can be deployed as a communications node within the public venue." [*Id*.]. The communication pods can also feature "a rechargeable power source sustaining self-

containing operation of the wireless communication electronics," as well as a solar cell providing electrical power to charge the rechargeable power source. [*Id.*].

The '820 Patent has three independent claims—claims 1, 8, and 15, all "system" claims. [*Id.* at 14-16]. The Patriots assert that claim 1 is representative for present purposes. [Doc. No. 20 at 11]. Claim 1 recites:

> 1. A system providing communications capacity and supporting the communications of video and data to hand held wireless devices located throughout a sports and entertainment venue, comprising:
>     at least one server managing data including video of various perspectives of an activity captured by video cameras located throughout the sports and entertainment venue; and
>     more than one self-contained pod including wireless communications electronics and an integrated antennae for said self-contained pod to operate as a wireless access point sustaining bi-directional communication with said at least one server, said more than one self-contained pod deployed as a matrix of communications nodes throughout a sports and entertainment venue to provide enhanced communications capacity for and data network access by said hand held wireless devices being used by spectators located throughout the sports and entertainment venue and providing access to said data from the at least one server to said hand held wireless devices in use by the spectators.

[Doc. No. 19-1 at 14-15].

Arena IP alleges that the Patriots have infringed on the '820 Patent by deploying "a matrix of communications nodes throughout Gillette Stadium (a sports and entertainment venue) to provide communications capacity for and data network access by hand held wireless devices being used by spectators located throughout the venue." [Doc. No. 19 at ¶ 15].

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal may be warranted based on "the inevitable success of an affirmative defense," such as patent invalidity, if "the only plausible reading" of the allegedly infringed patent "is one that demonstrates that the patent claims cover subject

matter that is not eligible for patenting." *Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, 581 F. Supp. 3d 357, 360 (D. Mass. 2022), *aff'd*, No. 2022-cv-1468, 2023 WL 193162 (Fed. Cir. Jan. 17, 2023) (cleaned up); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Eligibility under 35 U.S.C. § 101 is a question of law" that "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion).

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor," subject to three subject matter exceptions: "laws of nature, natural phenomena, and abstract ideas." 35 U.S.C. § 101; *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Such concepts are not patentable. *Bilski*, 561 U.S. at 601. The Supreme Court has devised a two-stage framework to determine whether these exceptions apply. Under this framework, a court must (1) "determine whether the claims at issue are directed to one of those patent-ineligible concepts" and, if so, (2) "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (cleaned up).

### III. ANALYSIS

#### A. *Alice* Step One

Under the first step of the *Alice* framework, the Court must determine whether the claims are directed to an abstract idea. *Id*. In so doing, the Court "look[s] at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (citations omitted). Regarding computer-related technology, the primary question is "whether the focus of the claims is on the specific asserted improvement in computer

capabilities … or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016); *see also Smart Software, Inc. v. PlanningEdge, LLC*, 192 F. Supp. 3d 243, 246 (D. Mass. 2016) ("courts will … look for an improvement to the functioning of the computer itself").

Looking at the character of the claims as a whole, this Court finds that the '820 Patent is directed to an abstract idea. The '820 Patent describes the claimed invention as "related to wireless data communications system communications nodes set up to establish a communication network within public venues including sports and entertainment venues," as well as "related to wireless data communications systems including communications nodes comprising a communication network within a public venue supporting access to video and data by hand held devices also located within the public venue." [Doc. No. 19-1 at 11]. In simpler terms, the claims are directed to providing wireless communications access in a public venue, through the conventional use of existing wireless data repeaters—and nothing more. Courts have routinely held similar claims to be abstract and patent-ineligible. *See, e.g.*, *Riggs Tech. Holdings*, 581 F. Supp. 3d at 362 (finding claims patent-ineligible where they merely applied an "existing process" and "existing technology" to achieve "an abstract end-result" of providing wireless access to training programs); *Affinity Labs*, 838 F.3d at 1258 (finding that "[t]he concept of providing out-of-region access to regional broadcast content is an abstract idea," as "a broad and familiar concept concerning information distribution that is untethered to any specific or concrete way of implementing it"); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir. 2020) (finding claims patent-ineligible where "the claimed invention merely improves the abstract concept of delivering targeted advertising using a computer only as a tool," rather than improving the functionality of the computer or system itself).

The various claims differ only in adding peripheral elements—none of which Arena IP elaborates upon in its briefing, beyond making the bare assertion that each independent and dependent claim has "additional concrete and technical elements and steps requiring separate patentability analysis," [Doc. No. 23 at 11-12]—and none of the claims describe improvements in computer technology or wireless communication techniques. Although the claims recite "concrete, tangible components," such as self-contained pods that include wireless communications electronics and an integrated antenna, "the recited physical components merely provide a generic environment in which to carry out the abstract idea" of providing wireless communication in a public venue. *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). The use of wireless repeaters to extend connectivity to a wireless communication network is nothing new. And, to the extent that Arena IP asserts the '820 Patent's claims do not relate to an abstract idea simply because they describe wireless communications access within the specific setting of older public venues, "[l]imiting the abstract idea at issue to one context … does not suffice to establish an improvement over existing systems or a novel solution to a technological problem." *Riggs Tech. Holdings*, 581 F. Supp. 3d at 362; *see also Affinity Labs*, 838 F.3d at 1258–59 ("merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract").

Where the claims of the '820 Patent describe an existing process and propose using existing technology to achieve the result of providing wireless communications access in a public venue, the claims are directed to an abstract idea.

### B. *Alice* Step Two

At *Alice* step two, the Court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (cleaned up). The claim

6

elements should "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (cleaned up).

The '820 Patent claims, both individually and as an ordered combination, contain no inventive concept sufficient to transform the abstract idea into a patent-eligible subject matter. Rather, the claims recite only generic computer components (e.g., a "server" and "more than one self-contained pod including wireless communications electronics and an integrated antennae…to operate as a wireless access point") and generic computer functions (e.g., "sustaining bi-directional communication with said at least one server," "provid[ing] enhanced communications capacity for and data network access by said hand held wireless devices," and "providing access to said data from the at least one server to said hand held wireless devices"), none of which Arena IP claims to have invented. [Doc. No. 19-1 at 14-16]. The dependent claims similar recite generic components and functions, such as rechargeable power sources, solar cells to charge the power sources, and the notion that the pods can be embedded in a wall or floor surface. [*Id.*].

At its core, the '820 Patent's claims disclose the idea that a system already in existence— i.e., a generic server and wireless repeaters, used in their ordinary and conventional manner to extend data communication via wireless access points—can be used on a large scale, in a public venue such as a sports stadium. Such an idea does not constitute an inventive concept, and such claims are not patent-eligible. *See Riggs Tech. Holdings*, 581 F. Supp. 3d at 362 (finding patent ineligible where it disclosed that "a process … already being performed as a human activity … and via wired computers… could also be performed, in more times and at more places, using wireless technology and handheld devices (which already existed and were in use for other

purposes), without proposing or claiming any improvement to such technology or devices in order to accomplish the stated (abstract) result"); *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) (finding that a claimed configuration of conventional computer hardware "itself is not an advance" and "does not add sufficient substance to [an] underlying abstract idea" to render it patent-eligible); *Affinity Labs*, 838 F.3d at 1263 (finding insufficient transformation where "the abstract idea of remote delivery" would "be implemented using the conventional components and functions generic to cellular telephones").

### IV.  CONCLUSION

For the foregoing reasons, the claims of the '820 Patent are not directed to patent-eligible subject matter under 35 U.S.C. § 101. As such, the Patriots' Motion to Dismiss is GRANTED.

SO ORDERED.

                                           /s/ Myong J. Joun
                                           United States District Judge